[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties were married CT Page 6081 on May 3, 1997.
The wife is a vice president at Anthem. Both before and during the marriage, she has had a number of very responsible positions in financial management, and has received a number of promotions and sizable increases in her salary, which was considerable at the time of the marriage. She holds both a bachelor's degree and a master's degree in business administration.
The husband has worked only intermittently during the marriage. As a young man during the early years after he graduated from college, he held a series of jobs in human relations, none of them for a very long time. Later, he began to work with his father, who in addition to his insurance business had a business building homes. However, this work was also intermittent, and he did not report substantial income before the marriage.
During the first year and a half after the marriage, he worked as general contractor on a house his father was building. This house was later purchased by the wife, who had title in her name alone at his request. He was concerned about liability because of his work. He testified that he drew no salary, but was entitled to a share of the profit when the house was sold. In fact, he has earned less than $15,000.00 since the beginning of the marriage, except for the funds contributed to the house purchase.
When the wife bought the house, the parties were given $10,000.00 by the husband's father. In addition, she received a credit of $84,000.00 toward the purchase price, which represented the money the husband would have received from the proceeds of the sale of the house on account of his work over the previous eighteen months. Finally, the wife contributed about $26,000.00 in additional costs, which were paid directly to the husband's father. The husband seeks to have the party's respective contributions paid to them out of the proceeds of the house or, in the alternative, that they each receive from the proceeds a share proportionate to what they originally contributed. The wife has paid all mortgage, tax, insurance, and other expenses needed to maintain the house since they moved into it, and has continued to do so during the pendente lite period. She has reduced the mortgage principle by $11,000. Accordingly, her contribution was $37,000.00. The house is valued at $415,000.00, but after paying closing costs, commissions, and the mortgage, it will yeild less than $100,000.00.
The wife had reason to believe, prior to the marriage, that the husband had resources and income. He told her so. He purchased an engagement ring for $18,500.00, and a honeymoon package to Hawaii for more than CT Page 6082 $7,000.00. The source of those funds is a mystery. His total reported income for the five years before the marriage was only $35,000.00. He testified that the funds came from sums his father had been holding for him, but he was not able to tell how much there had been. He was not credible when he testified that there were no such funds left now.
The husband is a student at the Culinary Institute of America, and upon his graduation in less than two years will receive employment at an annual salary in excess of $60,000.00. He can not presently work as a builder or in the human relations field.
The wife is the beneficiary of a testimentary trust established by her grandmother, and will receive approximately an additional $45,000.00 from it.
In making its findings of fact and orders, the court has considered the evidence, the demeanor and credibility of the witnesses, and the statutory criteria set forth in 46b-62, 46b-81, and 46b-82. The court makes the following orders.
1. The marriage of the parties has broken down irretrievably, and is dissolved. The wife is restored to the use of her former name, and will be known as Alison M. Nalewaik.
2. During the husband's lifetime, the wife will not move the remains of the parties' child.
3. The marital house will be listed for sale and sold. If repairs are determined by the wife to be necessary to effect the sale, the wife will pay for those repairs and the parties will split the costs of those repairs equally prior to distributing the equity. If such repairs are necessitated by the conduct of the defendant from now until the closing, whether intentional or unintentional, he will pay for them. The husband will receive seventy percent of the net equity from the sale of the house after payment of realtor's fees, attorney's fees, closing fees, any repairs and the mortgage. The husband will keep the house in a clean and marketable condition and will cooperate with the realtors to effect the sale. The husband will vacate the house on or before July 30, 2002, but will vacate within seven days if he fails to assist in the sale as set forth herein. The wife will have access to the house on twenty-four hours prior notice to the husband for the purpose of determining its condition or for the purpose of having repairs performed, and will have access at any time a realtor requests her presence for a showing. The wife will pay the expenses for the property that she has paid during the pendente lite period. CT Page 6083
4. The husband will receive the proceeds of any lawsuit arising out of an injury he suffered in September, 2001, but will repay the wife for any medical expenses she has paid in his behalf arising out of that injury, if he receives compensation for those expenses from any source whatsoever.
5. Except as is necessary to comply with Paragraph 6 of this judgment, the wife will keep her stock options, retirement plans, pensions, bank accounts, money market accounts, and the proceeds of the Margaret Dobson Trust, and will continue to have the liability for any debt in her name.
6. The wife will pay the husband's attorney the sum of $9,000.00 toward his attorney's fees. The wife will pay the husband $15,000.00 as lump sum alimony. Payments will be made in twenty-one days.
7. Until the husband moves from the house, the wife will pay him periodic alimony of $300.00 per week. After the husband moves from the house, she will pay him periodic alimony of $27,500.00 per year, payable in advance monthly at the rate of $2,291.66 on the first day of each month by direct deposit into his checking account. All alimony will terminate upon the wife's death or in December, 2003, whichever is sooner. The term and amount of alimony are not modifiable, except that if the husband ceases to be a student at the Culinary Institute of America, alimony will be modifiable downward. As additional alimony, the wife will pay up to $300.00 per month toward the cost of the husband's COBRA benefits so long as alimony is payable by making payment directly to the insurance carrier.
8. The parties will exchange personal property in accordance with their stipulation. Both parties will keep their own motor vehicles. The husband will receive the joint checking account, and will put the account in his own name.
9. The wife will receive any refund from the parties' joint tax return for 2001.
10. The husband will indemnify the wife and hold her harmless on any liability or debt on his financial affidavit, any other existing debt, disclosed or undisclosed, and any tax liability he has or may be determined to have to the United States or the State of Connecticut. In the event that any governmental agency makes a claim against the wife for responsibility for unpaid taxes, penalties, or interest on account of the husband's income or business activities during any portion of the marriage, he will pay her reasonable attorney's fees to defend against such a claim. He will pay the wife alimony of $1.00 per year for ten years, modifiable only in the event and to the extent that he fails to CT Page 6084 indemnify her and hold her harmless as set forth in this paragraph.
11. The husband will not communicate with the wife at her place of employment, and will not otherwise communicate with her except as is necessary to complete the transactions ordered in this judgment. He will not communicate with her employer except in connection with his own insurance claims or needs.
Judgment will enter accordingly.
BY THE COURT,
GRUENDEL, J.